Now move to the next case, which let's see, case number four was being decided on the briefs. So case number five is Zellweger v. Saul. Council are ready. Morning. Good morning, Your Honor. Yes, I'm ready. All right. You may proceed. Good morning. May it please the Court. My name is Meredith Schacht, and I represent the Commissioner of Social Security. Step three of the five-step sequential evaluation process provides a shortcut for claimants with extreme conditions. While no claim is ever denied at step three, a claimant whose condition is particularly severe can be found presumptively disabled at step three. This case asks the same question that the Court recently addressed in Jeske v. Saul. Did the ALJ adequately explain his step three conclusion that the claimant was not presumptively disabled under Listing 1.04? You should have reached the same conclusion here that you reached in Jeske. The ALJ adequately explained his conclusion that Mr. Zellweger's condition did not satisfy the necessary criteria of Listing 1.04. As the ALJ explained, the medical records in this case demonstrated that Mr. Zellweger had degenerative disc disease, but that the criteria of Listing 1.04 had not been satisfied. The ALJ provided an example of a medical record which demonstrated this. That medical record showed that normal functioning, that Mr. Zellweger had normal functioning, including normal muscle mass, strength, and tone, and intact reflexes, though there were some other observations of obesity and tennis elbow. Those normal findings, however, were inconsistent with Listing 1.04, which require motor loss accompanied by sensory or reflex loss. Thus, the ALJ explained how he reached his conclusion that Mr. Zellweger had not met the criteria. But that was not the only evidence that the ALJ discussed that demonstrated that Mr. Zellweger did not satisfy the requirements of Listing 1.04. The ALJ continued on through the sequential evaluation process and discussed additional evidence after he announced his residual functional capacity finding. And the ALJ discussed, particularly relevant to Listing 1.04, the ALJ discussed a report from neurosurgeon Dr. Soriano, who described his examination of Mr. Zellweger as, I quote, completely normal. Dr. Soriano observed normal motor examination, a normal sensory examination, and a normal reflex examination. The ALJ recited these exact findings verbatim on page 7 of his decision. Thus, the ALJ demonstrated that Mr. Zellweger did not satisfy the requirements of Listing 1.04, which include, among other things, motor loss combined with sensory or reflex loss. Mr. Zellweger asserted, and the district court concluded, that the ALJ's explanation of his Step 3 conclusion on page 4 of his decision was insufficient and that the ALJ's discussion of additional evidence later in his decision could not be considered. But this court recently rejected that very same argument in Jeske versus Saul. Jeske raised the same argument as Mr. Zellweger and invoked the Chenry Doctrine, which the district court also raised. You rejected the argument and specifically stated that looking at the ALJ's later discussion did not run afoul of Chenry. You explained that, and I quote, when an ALJ explains how the evidence reveals a claimant's functional capacity, that discussion may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing. And as we've already recognized, to require the ALJ to repeat such a discussion throughout the decision would be redundant. Jeske controls the outcome of this case. The ALJ's determination that Mr. Zellweger's condition did not meet or equal listing 1.04 was supported by substantial evidence and was adequately explained. Therefore, we ask the court to reverse the district court's decision and affirm the ALJ's decision here. Thank you, Counsel. If there's no questions, then I would reserve the remainder of my time for rebuttal. Thank you very much. Thank you. Counsel? Good morning. May it please the court, Counsel. My name is Greg Zewall. I represent the plaintiff appellee in this case, Michael Zellweger. The reason the district court remanded this matter for new hearing is because the ALJ's decision failed to adhere to two longstanding principles articulated by Seventh Circuit case law. One is that the ALJ must perform more than a perfunctory analysis of a listing when deciding the case at Step 3. And two, the ALJ must build the requisite logical bridge between the evidence and his or her conclusion. If the ALJ doesn't do the first step, he or she, the ALJ, cannot do the second either. As the district court articulated in this case when it ruled in favor of the plaintiff, the ALJ's decision listing 1.4, 1.04 analysis here was perfunctory. The ALJ did identify the listing by name, the cervical degenerative condition, but only cited one office note of one of his family doctor visits to justify that decision that the listing wasn't satisfied. The ALJ did not do several things required by the case law leading back from the Minick decision several years ago. The ALJ did not cite any of the criteria of listing 1.04. The ALJ did not indicate which of those criteria were either met or not met. The ALJ did not discuss any of the favorable evidence which supported the listing finding. As the district court pointed out, the ALJ's 1.04 discussion did not even rise to that perfunctory level of the one in Minick where at least the ALJ identified the criteria. Minick also indicates what should have been done in this case is that the ALJ should have discussed the favorable evidence at the step three determination. That was not done here either. I think it's important in this case to point out one of the differences in the ALJ's decision when he was discussing the case at step three with how the ALJ addressed the 1.04 listing for the spinal disorder versus how the ALJ discussed listing 9.0 when he discussed the plaintiff's diabetic condition. Council, before you do that, I think you're going to have to address the effect of our recent decision in Jeske on this case. Sure. You know, Jeske, as this court indicated, indicated that you can have a quote-unquote double explanation when discussing the RFC findings and then, you know, to justify the step three determination as well. I think the problem in this case is if you read the ALJ's decision, particularly pages 6 and 7, there are only about three paragraphs which discuss the plaintiff's cervical condition where the ALJ recites some cervical findings, you know, favorable to the ALJ's RFC determination. As the district court held in this case, the ALJ's discussion of the evidence in connection with the RFC finding didn't provide any explanation as to why he concluded the listing 1.04 was not met. So, essentially, I think what we're arguing about here, more recently now given the Jeske decision, is that even if you take the RFC determination and the ALJ's discussion of the RFC and how he arrived at that determination, you still need enough discussion of that, discussion of the criteria within the listing to explain why or why not those listing criteria are either met or not met. And I don't think this case reaches to that level. We don't have... Wasn't there a... Counsel, wasn't there a logical bridge here shown? I don't believe so. Because, essentially, we don't have any of the criteria within the listing discussed even in the RFC determination. Yes, there are references to pertinent medical that the ALJ wanted to highlight when making an RFC determination, but we never get to this point where we take that discussion and we translate that to how that evidence fits into any of the criteria, whether they're met or not met. And I think the diabetes listing discussion is a good example because, at least there, when the judge made the non-listing finding as to the diabetes, he specifically cited one of the particulars of the listing, the no evidence of disorganization of motor function, and said, you know, that criteria wasn't met. Even if you take the RFC discussion before Step 4 and you take all that language in those subsequent pages past Step 3, you can never really relate that back and figure out how those criteria are either met or not met under 1.04. You know, Jeske has indicated that just the way the decision was written had this double explanation that, yeah, you don't need to go through the redundancy of repeating all the evidence, but you still have to tie it back into how it meets the criteria of the listing or doesn't meet the criteria of the listing. So, there were prior cases, I think in a similar tone, the expression necessary detail was used. So, cases where maybe the listing wasn't discussed that much in detail, but the later discussions on RFC had the, quote, unquote, necessary detail to tie it back to the listing. I just don't think we reached that standard under the evidence in this case and the ALJ's decision in this case, because there is no indication of what criteria within 1.04 he met or didn't meet. And the district court ruled accordingly, and it held that, and it looked, even though the court made its decision in this case, the district court in this case made its decision before Jeske, the district court anticipated this argument and said, well, look, can we read the rest of the decision as a whole and figure out why this listing criteria was met or not met? And it said, you know, we can't do that. You know, none of the criteria are discussed in the RFC determination, and we're simply going to have to kind of wonder and speculate which of those criteria were either met or not met, because the ALJ, frankly, did not get into enough detail in the RFC discussion about that. So, that's why I think this case is different from Jeske and those prior cases that talked about necessary detail. It's just because there wasn't enough discussion in the decision. There wasn't enough review of the evidence in light of the criteria of the listing. As argued in my brief, you know, standards for RFCs and standards for criteria of the listing are different. You can have a person that might have an arthritic condition, he'll meet a listing under the RFC, but his arthritic condition will still permit him to do sedentary work, and the RFC might be sedentary, and he's found not disabled. So, you can have different evidence, which leads to different conclusions, and that's why it's important to take this evidence, even in the RFC discussion, and tie it in with how it meets the listing or doesn't meet the listing and how it addresses the RFC. Ultimately, in this case, I think, you know, as the district court ruled, there was plenty of evidence regarding meeting the criteria within the listing, evidence as to each of those criteria regarding motor loss, nerve root compression, and so forth. The ALJ didn't discuss, actually, some of the favorable evidence that he could have to decide whether that listing was met, and I think that's what ultimately the district court held in this case, that there's not enough discussion here, even in the RFC determination, to discuss the criteria within the listing, and the ALJ, you know, needs to go back and essentially do this, review the evidence, again, with the medical expert, indicate which listing criteria are met or not met within 1.04, and make his decision accordingly to build that logical bridge. Thank you. Thank you, counsel. Schmidt, any further? Your Honors, I would just, I would like to touch on the fact that in Jeske, the ALJ also did not expressly address the listing criteria underneath the residual functional capacity discussion. So, here, counsel said that, and he is correct, that the district court found that because the ALJ never expressly tied the evidence back to specific listing criteria, we could not consider that. That would not be supportive of the ALJ's conclusion. Go back to Judge Kaney's question to opposing counsel, how did he build a logical bridge? He built a logical bridge by discussing all of the relevant evidence. So, in this case, there was a very short relevant period, only about a month. The ALJ discussed all of the evidence from shortly before and through the relevant period, and specifically identified evidence that was relevant to his listing conclusion. So, the ALJ acknowledged the testimony from Mr. Zellweger. The ALJ noted even that there was some indication of some restricted range of motion in the cervical spine, but the ALJ discussed then every other relevant finding, which demonstrated that the conditions, the criteria of the listing could not be met. So, that included the motor examinations, that included strength and muscle observations that are relevant to the motor examination, that included discussion of sensory examinations, discussion of reflex examinations, and the ALJ cited that specific evidence in his discussion. He cited some of that evidence in his discussion under the heading announcing his listing conclusion, but then he discussed additional evidence later in the decision. So, the logical bridge is the ALJ's discussion and identification of the relevant evidence. In this case, there is no conflicting evidence that could have satisfied the listing that the ALJ did not address. The district court identified some evidence, but that evidence is not sufficient to satisfy the listing. The court and Mr. Zellweger relied on subjective statements from Mr. Zellweger, whereas the listing specifically required that these physical criteria be met by objective evidence identified by medical examination. And so, that is why the court, some of the court's previous precedent, including Minick, do not control in this case, but Jeske does control. The court there, you did not require that there would be a specific express statement of evidence tying it directly back to the listing. You read the decision with common sense and as a whole and could tell in that decision, as in this decision, that the evidence supported the ALJ's conclusion. We would ask that you do the same here and find that the ALJ's substantial discussion of the evidence throughout his decision supported his listing conclusion. Thank you. And we would ask that you would affirm the ALJ's decision. Thank you, Ms. Schacht. Thank you. Thanks to both counsel on the cases taken under advisement.